UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRIAN HOLCOMB and KAREN
HOLCOMB,

      Plaintiffs,

v.                              Case No: 2:24-cv-0181-JES-NPM

SAFETY SPECIALTY INSURANCE
COMPANY,

      Defendant.

_____

### OPINION AND ORDER

    This matter comes before the Court on defendant's *Daubert* Motion to Exclude the Opinion Testimony of Plaintiffs' Expert, John McHugh (Doc. #45) filed on June 3, 2025. Plaintiffs filed a Response (Doc. #50) on June 17, 2025. For the reasons set forth below, the motion is denied.

**I.**

    Defendant seeks to exclude the opinions of plaintiffs' expert arguing that John McHugh's opinions are not based upon sufficient facts or data and are not the product of a reliable methodology.

    On September 28, 2023, Allied Engineering, LLC (Allied) completed an investigation of 5730 Estero Boulevard located on Fort Myers Beach, Florida, the residence of Brian and Karen Holcomb. The investigation began on July 10, 2023, and the

inspection was performed by employee Forensic Engineer John McHugh P.E. of Allied Engineering, LLC. (Doc. #45-2.)

Mr. McHugh obtained his master's degree in engineering management in 2014, and has lived on Marco Island, Florida, for 10 years. (Doc. #45-3 at 15-16.) McHugh worked as a carpenter for over 20 years in New York City and San Franscico, including installing or framing roofs, before going back to school. (Id. at 16-17.) McHugh has a professional engineering license, and his Florida license was issued in 2021. To obtain the license, he had to graduate from an accredited engineering school, have worked under a licensed engineer for five years, have additional engineers sign off on his work, and have taken an exam. (Id. at 21-22.)

McHugh worked for Allied in 2023, but now has his own company called Total Design Services, LLC focusing on design work. (Id. at 16, 17-18.) The bulk of McHugh's forensic investigation experience was limited to his time at Allied. (Id. at 19.) Everything he did for Allied was related to forensics, mostly for homeowners and plaintiffs and never for an insurance carrier. (Id. at 23-24.) McHugh completed at least 100 reports for Allied and has had his deposition taken at least 10 to 12 times for work related to Allied. (Id. at 25, 27.) A very small percentage of time is devoted to serving as an expert witness. At Allied, half of claims or investigations were wind and other half were flood.

(Id. at 29.)  McHugh completed approximately 15 claims related to Hurricane Ian, and all were found to be wind damage.  (Id. at 29-30.)  McHugh has agreed to act as an expert witness in this case but has not been asked to provide an opinion regarding the cost of repairs, and no other opinions other than the cause and origin information are in the report.  (Id. at 31.) McHugh receives a percentage of what Allied charges, in this case 40% of the $375 an hour charged for his deposition.  At the time when he was employed by Allied, he received a base salary and 15% of the reports generated.  (Id. at 32-33.)

On the day of inspection, July 10, 2023, between 1:30 pm and 2:30 pm, about 10 months after the storm, McHugh went to the site early to walk around but most of it was cleaned up.[1]  McHugh did find palm trees that were sheared off about five or six feet above the sand, some construction debris, the pool mechanicals were still attached to a concrete pad or block of concrete, and there was a big garage out front that was still standing because

---

[1] Plaintiffs hired a cleaning crew to clean the lot at a cost of $3,500 in October 2022, and a second group came out to do a further clean-up for $6,500 in April 2023.  (Doc. #45-4 at pp. 44-45, 56-57.)  Plaintiffs also had the pool cleared of debris and water for $6,675 and added a required safety fence.  (Id. at 60.)  Plaintiffs later had the garage demolished and the pool removed at a cost of $28,000 so they could start over.  (Id.)  In February 2023, before the pool was removed, nine loads of sand were delivered to restore the beach due to scour removing sand at a cost of $7,650.  (Id. at 61.)

it was designed with breakaway walls.  (Id. at 36-38.)  A lot of records were destroyed when city hall was "wiped out", and the passage of time impacted the ability to investigate.  (Id. at 37-38.)

McHugh had the insurance carrier's engineer's report, and he went to the property a few times because he had other jobs in the area.  (Id. at 41.)  The report explained why and how a storm surge is formed and how it relates to wind speed, bathymetry, topography, factors other than storm size.  (Id. at 45-46.)  Most of the sources are from NOAA.  (Id. at 46.)  Initially, McHugh did not reach an "ultimate opinion" because he didn't have any pictures to look at, but when he got the Grindley Williams report, there were several pictures that he could use.  He also obtained pictures from plaintiffs[2] of the beaches, and pictures of everything from the National Hurricane Center showing the before and after images of the beach.  (Id. at 47.)

McHugh believes that the roof was torn off the house by the high winds which occurred approximately three hours before the storm surge.  Once the roof was off the house, the walls did not have any bracing on the top, and the roof and walls were no longer acting as a frame system.  (Id. at 47.)  The velocity of the winds was around 120 miles per hour according to the Ventusky

---

[2] There were 11 photographs.  (Doc. #45-4, pp. 62-67.)

wind report.  With 130-150 pounds per square foot of pressure pushing the wall in and out, it tore the house to pieces.  The storm surge came in and pushed around the splinters.  (Id. at 48.)  The roof was blown off, in McHugh's opinion, and landed in the neighbor's yard over the detached garage across Estero Boulevard and then landed upright across the street.  (Id. at 56-57.)

## II.

Admission of expert opinion evidence is governed by Fed. R. Evid. 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. In Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) and Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993), the Supreme Court held that the trial court has a "gatekeeper"

function designed to ensure that any and all expert testimony is both relevant and reliable. The importance of this gatekeeping function "cannot be overstated." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc).

In determining the admissibility of expert testimony under Rule 702, the Court applies a "rigorous" three-part inquiry. Frazier, 387 F.3d at 1260. A district court determines the admissibility of expert testimony by considering whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Knepfle v. J-Tech Corp., 48 F.4th 1282, 1294 (11th Cir. 2022) (quoting City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998)). In short, "the expert must be qualified; his methodology must be reliable; and his testimony must be helpful to the trier of fact." Doe v. Rollins Coll., 77 F.4th 1340, 1347 (11th Cir. 2023). "[T]he party seeking to introduce the expert at trial bears the burden of establishing his qualifications, reliability, and helpfulness." Knepfle, 48 F.4th at 1294 (citing Frazier, 387 F.3d at 1260).

"Even expert testimony which satisfies these three requirements, however, may nonetheless be excluded under Rule 403 if the probative value of the expert testimony is substantially outweighed by its potential to confuse or mislead the jury, or if it is cumulative or needlessly time consuming." <u>Frazier</u>, 387 F.3d at 1263. In the final analysis, the admission of expert testimony is a matter within the discretion of the trial court. <u>Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.</u>, 402 F.3d 1092, 1103 (11th Cir. 2005); <u>Frazier</u>, 387 F.3d at 1258.

The gatekeeper function, however, does not provide the Court with an opportunity to substitutes its judgment for that of a jury as to the persuasiveness of the expert evidence. <u>United States v. Barton</u>, 909 F.3d 1323, 1332 (11th Cir. 2018). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (<u>Id.</u>) (citation omitted).

The expert testimony anticipated in this case is not scientific. Nonetheless, "[t]he principles set out in <u>Daubert</u> apply to soft-science expert testimony. 'Social science testimony, like other expert testimony must be tested to be sure that the person possesses genuine expertise in a field and that her court testimony adheres to the same standards of intellectual rigor that are demanded in her professional work.'" <u>Carrizosa</u>

v. Chiquita Brands Int'l, Inc., 47 F.4th 1278, 1317–18 (11th Cir. 2022) (citations omitted).

> That said, "social science research, theories, and opinions cannot have the exactness of hard science methodologies," and "peer review, publication, error rate, etc. are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert." [] Where "ideal experimental conditions and controls" are precluded, "other indicia of reliability are considered under Daubert, including professional experience, education, training, and observations." [] Where appropriate, social science expert testimony can give the jury a view of the evidence well beyond their everyday experience.

Id. at 1318 (internal citations omitted).

### III.

The first requirement is that the expert is qualified to testify on the subject matter. As noted by plaintiffs, defendant does not raise any arguments as to McHugh's qualifications as an expert. (Doc. #50 at 2.) The Court will therefore proceed to the other requirements and deem this first element met.

#### A. Reliability of Methodology

Defendant argues that McHugh's conclusions are not based on sufficient facts and data because the foundation for McHugh's conclusions is deficient. Plaintiffs respond that reaching a different conclusion does not mean McHugh's opinions or

investigation were deficient or not based on sufficient facts or data.

McHugh's report includes a list of references as follows:

National Hurricane Center (N.H.C.) - Hurricane Irma Archive, Sept.-Oct. 2022.Tropical Cyclone Report-Hurricane IAN.

National Environmental Satellite Data and Information Service. (NESDIS).

NOAA GOES 16 Satellite Tracking Ian 9/23/2022 -10/01/2022.

NOAA Hurricane Ian Imagery storms.ngs.noaa.gov/storms/ian/index.html.

Ventusky Visualization Map by lnMetco for September 28, 2022.

VERISK Benchmark Wind History Report for September 10, 2017.

USGS Earth Resources Observation and Science (EROS) Center, Landsat 8 Sat.Sys. 9/28/2022.

USGS Path Map Hurricane Ian Sept. 27-30, 2022.

National Weather Service Path Map - Hurricane Ian.

ACCUWEATHER https://www.accuweather.com/en/hurricane/survey-findshurricane-ian-storm-surge-levels-in-fort-myers/1262778

McGraw-Hill Co., Architectural Forensics, 2008 by Sam A. A. Kubba, PhD, AIA, RIBA.

Standard and Reference Guide for Professional Water Damage Restoration I, IICRC 5500, 4th Ed.

Gypsum Assoc., "Assessing Water Damage to Gypsum Board", (GA-231-2019).

National Institute of Building Sciences. Whole Building Design Guide. Wind induced pressures on buildings.

BuildFax Permit History Report 2022.

2020 Florida Building Code Seventh Edition.

Google Earth Pro, 2023.

Lee County Property Appraiser, 2023.

New York Post 9/29/2022

PALM                    BEACH                    POST: https://www.palmbeachpost.com/videos/news/2 022/09/30/drone-shows-ft-myersbeach-wreckage.

WFTX Southwest Florida Fox 4 Now.com https://www.fox4now.com.

SARASOTA              HERALD              TRIBUNE https://www.heraldtribune.com.

USA    TODAY    https://www.usatoday.com/in-depth/graphics/2022/09/27/how-stormsurge-works-hurricane-ian/10441070002/.

Karen and Brian Holcomb, Homeowner's provided [] additional photos showing the home immediately after Hurricane Ian. The couple also provided Phase I, II, and III building plans detailing the additions designed by McHarris Planing [sic] and Design.

Realtor.com, https://www.realtor.com/.

ResearchGate https://www.researchgate.net/figure/Design.

SVC    Storm    Chasing    Videos    LLC, https://www.stormchasingvideo.com/2022/09/2 9/extreme-debris-filled-windsplacida-florida-hurricane-ian-9-28-2022/

(Doc. #43-3 at 5-6.)  Defendant argues that McHugh ignores the data from the NHC Report and the Max Olson video evidence in formulating his opinions, even though both are included in McHugh's references.  Defendant argues that the conclusions are the product of "educated guesses", and McHugh relied entirely on the information of others and the photographs of others in the face of "undisputed video evidence[3]" and the NHC Report.

The reliability of non-scientific expert opinions depends heavily on the knowledge and experience of the expert, not the exactness of the methodology.  Indicia of reliability under Daubert includes professional experience, education, training, and observations.  Carrizosa, 47 F.4th at 1318. If an expert "is relying solely or primarily on experience, then he must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Id. at 1322.

While defendant may not agree with the opinion and conclusions, it is not the methodology that is at issue.  Rather, defendant takes issue with the weight attributed to the various sources and the conclusions reached.  This is an issue for the jury not a reason to exclude the opinion as not reliable.

---

[3] The Max Olson video depicts a property 2.9 miles North and West of plaintiffs' property.  (Doc. #40 at 1.)

**B. Helpfulness**

The third prong asks, "whether that reasoning or methodology properly can be applied to the facts in issue." <u>Daubert</u>, 509 U.S. at 593. Commonly referred to as the "helpfulness" inquiry, expert testimony can properly be applied and is helpful if it relates to any issue in the case and if it concerns matters that are beyond the understanding of an average lay person. <u>Prosper v. Martin</u>, 989 F.3d 1242, 1249 (11th Cir. 2021).

It is undisputed that McHugh did not inspect the property until months after Hurricane Ian, after the property's condition had changed due to a clean up and added sand, and that the pictures were taken by others.  These facts do not take away from the analysis that relied partially on defendant's photographs taken soon after Hurricane Ian or the fact that the report provides a more in-depth analysis than the Grindley Williams report.

**C. Rule 403**

The Court finds that McHugh satisfies all three prongs of <u>Daubert</u>, and the Court finds no undue prejudice from the anticipated testimony.  The weight of the testimony is an issue for the jury.

Accordingly, it is hereby

**ORDERED:**

Defendant's *Daubert* Motion to Exclude the Opinion Testimony of Plaintiffs' Expert, John McHugh (Doc. #45) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this ___27th___ day of August 2025.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record